**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation,<br>as Receiver for Colonial Bank, | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 6353 |
| v. | ) ) | Chief Judge Ruben Castillo |
| Boris Masarsky and Linda M. Surges, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Deposit Insurance Corporation (the "FDIC"), as Receiver for Colonial

Bank ("Colonial"), brings this action against Boris Masarsky and Linda M. Surges (collectively,

"Defendants") asserting breach of contract, negligent misrepresentation, and negligence. The

FDIC's action arises out of real estate appraisals of a residential property located in Northbrook,

Illinois (the "Property") that Defendants conducted and that allegedly contained

misrepresentations, used inappropriate comparable sales, and did not comply with the Uniform

Standards of Professional Appraisal Practice ("USPAP"). Presently before the Court are

Defendants' separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, Defendants' motions to dismiss are granted in part and denied in

part.

## RELEVANT FACTS

Colonial was a state chartered bank with its principal place of business in Montgomery,

Alabama. (R. 1, Compl. ¶ 1.) Colonial was closed by the Alabama State Banking Department

on August 14, 2009, and the FDIC was appointed as its Receiver pursuant to 12 U.S.C. § 1821.

(*Id.* ¶ 2.) The FDIC alleges that, as Receiver, it is obligated to recover losses incurred by

Colonial. (*Id.* ¶ 3.) The FDIC alleges that Masarsky and Surges were, at all times pertinent to

the issues at hand, licensed in Illinois as Certified Residential Real Estate Appraisers. (*Id.* ¶¶ 4-

5.) In or around January 2007, Defendants entered into separate contracts with Investment

Mortgage Group (the "Broker") to prepare written appraisals for the Property (the "Appraisals").

(*Id.* ¶ 9.) Defendants knew that their Appraisals would be used for mortgage lending purposes.

(*Id.*) Surges appraised the value of the Property at $1.275 million while Masarsky valued it at

$1.3 million. (*Id.* ¶¶ 10-11.) Certain appraiser's certifications expressly providing various

guarantees were attached to each Appraisal. (*Id.* ¶ 14.) These certifications include, *inter alia*:

> 2.     I performed a complete visual inspection of the interior and exterior areas
> of the subject property.  I reported the condition of improvements in factual,
> specific terms.  I identified and reported the physical deficiencies that could affect
> the livability, soundness, or structural integrity of the property.

> 3.     I performed this appraisal in accordance with the requirements of the
> Uniform Standards of Professional Appraisal Practice . . . .

> * * *

> 7.     I selected and used comparable sales that are locationally, physically, and
> functionally the most similar to the subject property.

> * * *

> 15.    I have not knowingly withheld any significant information from this
> appraisal report and, to the best of my knowledge, all statements and information
> in this report are true and accurate.

> * * *

> 23.    The borrower, another lender at the request of the borrower, the mortgagee
> or its successors and assigns, mortgage insurers, government sponsored
> enterprises, and other secondary market participants may rely on this appraisal
> report as part of any mortgage finance transaction that involves one or more of
> these parties.

> * * *

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability.

(*Id.*) Defendants' Appraisals were submitted to Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), a mortgage lending firm, for the purpose of facilitating a mortgage refinance loan for Alex B. Bulmash. (*Id.* ¶ 12.) On or about June 25, 2007, in reliance of Defendants' Appraisals, TBW used its line of credit at Colonial to fund the loan, which was secured by the Property. (*Id.* ¶¶ 13, 17.) The FDIC alleges that in doing so, TBW assigned and transferred to Colonial any and all claims against Defendants in connection with the loan and with Defendants' Appraisals of the Property. (*Id.*)

Bulmash defaulted on the loan, and the FDIC alleges that it subsequently discovered that Defendants' Appraisals omitted material information regarding the completion of the Property and used inappropriate properties as comparable sales. (*Id.* ¶¶ 18-19.) The FDIC claims that these misrepresentations resulted in an inflated appraised value for the Property and a loan that was severely under-secured. (*Id.* ¶¶ 18-19.) The FDIC further alleges that TBW would not have funded the loan if it had known the true market value of the Property. (*Id.* ¶ 20.)

## PROCEDURAL HISTORY

The FDIC, as Receiver for Colonial, filed its three-count complaint with this Court on August 10, 2012. (R. 1, Compl.) In Count I, the FDIC alleges that Defendants materially breached their contracts with the Broker to provide appraisals for the Property when they: (1) failed to accurately appraise the value of the Property; (2) misrepresented that the construction of the Property was complete; and (3) failed to complete the Appraisals in conformity with the USPAP. (*Id.* ¶ 26.) The FDIC contends that it suffered damages, including a severely under-secured mortgage loan of which only a fraction may be recovered through foreclosure, as a direct and proximate result of Defendants' material breaches. (*Id.* ¶ 28.) In Count II, the FDIC alleges

that Defendants negligently misrepresented the value of the Property, their compliance with the USPAP, and the Property's material characteristics and comparables. (*Id.* ¶ 31-32.) The FDIC contends that it suffered damages, including a severely under-secured mortgage loan of which only a fraction may be recovered through foreclosure, as a direct and proximate result of Defendants' negligent misrepresentations. (*Id.* ¶ 34.) In Count III, the FDIC alleges that Defendants acted negligently in their preparation of Appraisals that contained misrepresentations, failures, and deficiencies in material breach of their duty to TBW to act in accordance with the law and "with custom, practices and standards of conduct of an appraiser prevailing in the industry." (*Id.* ¶¶ 37-38.) The FDIC contends that it suffered damages, including a severely under-secured mortgage loan of which only a fraction may be recovered through foreclosure, as a direct and proximate result of Defendants' negligence. (*Id.* ¶ 39.) On all counts, the FDIC requests damages, attorney's fees, and costs and expenses. (*Id.* at 9.)

On October 24, 2012, Masarsky moved to dismiss the FDIC's complaint pursuant to Rule 12(b)(6). (R. 12, Masarsky's Mot.) In response to Count I, Masarsky argues that false representations in an appraisal do not constitute a breach of contract. (R. 14, Masarsky's Mem. at 3.) Masarsky also argues that the FDIC is not a third party beneficiary of the alleged contract between Masarsky and the Broker and thus has no standing to bring a breach of contract claim. (*Id.* at 4.) As to Count II, Masarsky contends that the Appraisal is an opinion, rather than a statement of fact, and is therefore not actionable under a theory of negligent misrepresentation. (*Id.* at 5.) Further, Masarsky asserts that Counts II and III must be dismissed because he did not owe a duty of care to the FDIC. (*Id.* at 6.) Alternatively, he argues that Counts II and III must be dismissed because damages for economic losses cannot be recovered in tort pursuant to the economic loss doctrine set forth in *Moorman Manufacturing Co. v. National Tank Co.*, 435

N.E.2d 443 (Ill. 1982). (*Id.*) Finally, Masarsky argues that even if the Court declines to dismiss the complaint, the FDIC's request for attorney's fees lacks a statutory or contractual basis and must therefore be dismissed with prejudice. (*Id.* at 7.)

On November 21, 2012, the FDIC filed its response to Masarsky's motion to dismiss. (R. 17, Pl.'s Resp. Masarsky.) The FDIC argues that it has standing to bring its breach of contract claim because certification 23, which is attached to Masarsky's Appraisal, provides for reliance by certain third parties, and Colonial was an intended third party beneficiary. (*Id.* at 4-7.) The FDIC contends that Masarsky's argument "that an appraiser cannot be held to account for his negligent misrepresentations . . . has been roundly criticized and universally rejected" in Illinois. (*Id.* at 9.) Additionally, the FDIC contends that the statements in Masarsky's Appraisal are representations of fact, not opinions, and are thus actionable as negligent misrepresentations. (*Id.* at 10.) The FDIC also argues that a negligent misrepresentation action against appraisers falls within the information provider exception to the *Moorman* economic loss doctrine. (*Id.*) The FDIC argues that certification 23 and certification 3 demonstrate the duty to communicate accurate information Masarsky owed to foreseeable third parties such as Colonial. (*Id.* at 11-13.) The FDIC argues that its negligence claim is not barred by the *Moorman* doctrine because it stems from duties that arise outside of the contract for the Appraisal. (*Id.* at 13.) Finally, the FDIC contends that it is premature to strike its request for attorney's fees because they may be awarded as a form of damages even in the absence of a statute or a contractual agreement between the parties. (*Id.* at 14.)

On December 5, 2012, Masarsky filed a reply in support of his motion to dismiss. (R. 18, Masarsky's Reply.) Masarsky argues that if Colonial benefitted, it benefitted from the loan, not from the Appraisal, and it was not an intended third party beneficiary of the Appraisal. (*Id.* at 4.)

Masarsky also argues that the information provider exception to the *Moorman* doctrine does not apply to real estate appraisers. (*Id.* at 6.) Further, Masarsky argues that even if the exception were applicable, the FDIC failed to allege that he was in the business of supplying information or had a duty to communicate accurate information. (*Id.* at 7.) Finally, Masarsky contends that the USPAP does not create a duty to third parties and thus the FDIC failed to allege an extracontractual duty. (*Id.* at 7-8.)

On February 5, 2013, Surges filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).[1] (R. 28, Surges' Mot.) In requesting dismissal, Surges relies on many of the same arguments as Masarsky and argues that: (1) the FDIC failed to properly plead a contract between Surges and another entity as the entirety of its allegations are based upon Surge's Appraisal and not a contract, (R. 28-2, Surges' Mem. at 3-4); (2) the FDIC is not an intended third party beneficiary of an alleged contract between Surges and the Broker, (*id.* at 4-5); (3) Surges' statements in the Appraisal are expressions of opinion and thus are not actionable as negligent misrepresentations, (*id.* at 5-6); (4) the FDIC failed to state a claim for negligence because Surges did not owe a duty to the FDIC, (*id.* at 6); (5) Counts II and III are barred by the *Moorman* doctrine, (*id.* at 7); and (6) there is no statutory or contractual basis for attorney's fees, (*id.*).

Likewise, in the FDIC's February 26, 2013 response to Surges' motion to dismiss, it repeats the same arguments it made in opposition to Masarsky's motion: (1) certification 23, attached to Surges' Appraisal, expressly provides for reliance by third parties, (R. 37, Pl.'s Resp. Surges at 4); (2) the FDIC, as Receiver for Colonial, was an intended third party beneficiary of

---

[1] The Court notes that Surges filed two motions to dismiss on February 5, 2012. (R. 28 and R. 31.) After reviewing both motions and their accompanying memoranda, the Court finds that these filings are duplicative and will henceforth refer only to the first filing (R. 28).

the contract evidenced by Surges' Appraisal, (*id.* at 5-9); (3) in Illinois, appraisers face liability

for negligent misrepresentations made within appraisals, (*id.* at 9-11); (4) certification 23 and

certification 3 demonstrate Surges' duty to communicate accurate information to foreseeable

third parties such as Colonial, (*id.* at 12-14); (5) Surges had duties that arose outside of the

appraisal contract and that gave rise to the FDIC's negligence claim, (*id.* at 14-15); and (6)

attorney's fees may be awarded as a form of damages, and it would be premature for the Court to

strike a potential portion of damages at this point, (*id.* at 15).

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a

claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge

No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss,

the Court construes the complaint in the light most favorable to the nonmoving party, accepts all

well-pleaded factual allegations as true, and draws all reasonable inferences in the non-movant's

favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Pursuant to Rule 8(a)(2), a

complaint must contain "a 'short and plain statement of the claim showing that the pleader is

entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis."

*Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Detailed factual allegations" are not required, but the complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility in this context

does not imply that a court "should decide whose version to believe, or which version is more

likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to

survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about

the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

### I.      Jurisdiction and Applicable Law

This Court has "original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345. Congress granted that authority to the FDIC in 12 U.S.C. § 1819(b)(1), which states that the FDIC "shall be an agency of the United States for purposes of section 1345 of Title 28 without regard to whether the [FDIC] commenced the action." Thus, this Court has original jurisdiction over the present action. The three counts of the complaint are State law claims, and a substantial part of the events that gave rise to the claims occurred in Illinois. (R. 1, Compl. ¶ 8.) Accordingly, the Court applies Illinois State law.

### II.      Whether the FDIC has sufficiently stated a claim for breach of contract

Defendants first argue that the FDIC failed to state a claim for breach of contract because it did not allege a valid contract and because false representations do not constitute breach of contract. (R. 14, Masarsky's Mem. at 3; R. 28-2, Surges' Mem. at 4.) To state a cause of action for breach of contract under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) plaintiff's performance of all required contractual conditions; (3) defendant's breach of the terms of the contract; and (4) damages resulting from the breach." *Lindy Lu LLC v. Ill. Cent. R.R. Co.*, 984 N.E.2d 1171, 1175 (Ill. App. Ct. 3d Dist. 2013). As an initial matter, Defendants disagree as to what alleged contracts the FDIC accuses them of breaching. Surges argues that the FDIC refers to the Appraisals as "agreements" in its complaint and bases its breach of contract claim upon the Appraisals. (R. 28-2, Surges' Mem. at 3) (citing

(R. 1, Compl. ¶¶ 24-28)). Surges argues, however, that appraisals are not contracts upon which breach of contract claims may be brought. (*Id.* at 3-4.) Masarsky, on the other hand, argues that "the FDIC is not alleging that the [A]ppraisal is the contract. Instead, the FDIC alleges that [a] contract was entered into between Masarsky and [the Broker] in January 2007," and argues that Masarsky breached that contract. (R. 14, Masarsky's Mem. at 4) (citing (R. 1, Compl. ¶ 9)).

The FDIC does not contend that the Appraisals themselves are contracts; it argues that the Appraisals are evidence of the parties' contractual intent. (R. 17, Pl.'s Resp. Masarsky at 6-7; R. 37, Pl.'s Resp. Surges at 7.) The FDIC contends that it alleged the existence of valid and enforceable contracts between Defendants and the Broker in its complaint, and it points to paragraph nine in support of its contention. (R. 17, Pl.'s Resp. Masarsky at 5; R. 37, Pl.'s Resp. Surges at 5.) Paragraph nine of the complaint alleges that "[i]n or around January 2007, Defendants entered into contracts with [the Broker] to prepare appraisals for the [Property]." (R. 1, Compl. ¶ 9.) The FDIC contends that it does not possess the contracts between Defendants and the Broker and therefore cannot make allegations about those documents. (R. 37, Pl.'s Resp. Surges at 7.) It argues, however, that the certifications attached to the Appraisals serve as "evidence of contractual intent" and "afford [the FDIC] with a good faith basis to allege that [Defendants] breached the appraisal contract[s]." (*Id.* at 7-8; *see also* R. 17, Pl.'s Resp. Masarsky at 7.)

The allegations in paragraph nine of the complaint give sufficient detail about the contracts between Defendants and the Broker to provide the Defendants with fair notice of the basis of the FDIC's breach of contract claim. In a similar case to the present action, *Federal Deposit Insurance Corp. v. Frankel*, the FDIC, as Receiver for IndyMac Bank, brought suit against defendant appraisers for breach of contract and alleged, as it does here, that the

defendants used improperly and negligently selected comparable sales in their appraisals and misrepresented the value of the property. No. 11–CV–03279–LHK, 2011 WL 5975262, at *1-*2 (N.D. Cal. Nov. 29, 2011). In denying the defendants' motion to dismiss, the district court stated that defendants' argument that the FDIC had failed to identify a valid contract was "misdirected, because [the FDIC] does not assert that the Appraisal itself is the contract, but instead points to language in the attached appraiser's certificate solely as evidence of the parties' contractual intent." *Id.* at *3 (finding that the complaint contained "sufficient factual allegations" of a contract because it "clearly identifie[d] the agreement to prepare a written [appraisal] as the contract at issue"). Similarly, in *Federal Deposit Insurance Corp. v. Levitt*, the complaint "generally allege[d] that the mortgage brokers contracted with [the defendant] to conduct the property appraisals" and alleged the approximate date of the contract. No. 11CV1284, 2011 WL 4591933, at *2-*3 (S.D. Cal. Oct. 3, 2011). The district court found that the general allegations, combined with the defendant's "unique knowledge of the underlying transactions," provided the defendant "with sufficient notice such that he [was] able to conduct discovery and to adequately respond to the complaint." *Id.* at *3.

Defendants argue that other federal district courts have held otherwise and urge the Court to consider *Federal Deposit Insurance Corp. v. Simon*, No. 2:11–cv–01001–GMN–GWF, 2012 WL 1142708 (D. Nev. Apr. 4, 2012). (R. 18, Masarsky's Reply at 3; R. 41, Surges' Reply at 4.) The district court in *Simon* dismissed the FDIC's breach of contract claim because the complaint did not clearly state the first element of the claim, i.e., the existence of a contract. *Id.* at *3. The *Simon* court found that the complaint was "confusing" because it referred to "'contracts' and 'Appraisals' in the plural, but only appear[ed] to describe one contract." *Id.* In addition, the *Simon* court granted the FDIC leave to amend because it was not clear that the complaint's

deficiencies could not be cured by an amendment. *Id.* Defendants' reliance on *Simon* is misplaced; here, unclear and confusing allegations are not at issue. Instead, the Court finds that, as in *Frankel* and *Levitt*, the FDIC has alleged sufficient detail about the January 2007 contracts by which Defendants allegedly agreed to appraise the Property to give Defendants fair notice of the contracts that form the basis of the FDIC's breach of contract claim. (*See* R. 1, Compl. ¶ 9.)

Defendants next argue that even if the Court finds that the FDIC sufficiently pleaded the existence of valid contracts, it has failed to allege a breach of those contracts because false representations do not constitute a breach of contract. (R. 14, Masarsky's Mem. at 3; R. 28-2, Surges' Mem. at 4.) They argue that they completed the contracted-for Appraisals and provided valuations of the Property. (R. 14, Masarsky's Mem. at 3; R. 28-2, Surges' Mem. at 4.)

Illinois courts have consistently held that the remedy for false representations in an appraisal is not found in contract law. In *Duhl v. Nash Realty Inc.*, 429 N.E.2d 1267, 1272 (Ill. App. Ct. 1st Dist. 1981), an Illinois appellate court held that false representations within a contracted-for appraisal do not constitute a breach of that contract. The court affirmed the dismissal of the breach of contract claim because "[a]ccording to the complaint, the defendants agreed to value the property and did indeed value the property." 429 N.E.2d at 1272; *accord Sampen v. Dabrowski*, 584 N.E.2d 493, 499 (Ill. App. Ct. 1st Dist. 1991). Thus, the defendants had fulfilled their contractual obligations. The *Duhl* court added that "if [the defendants] erred in the value, the remedy properly lies in tort." 429 N.E.2d at 1272. More recently, in *Sampen*, an Illinois appellate court affirmed the dismissal of a breach of contract claim that was based upon an erroneous appraisal. 584 N.E.2d at 499. The court found that the defendants fulfilled their contractual obligations to appraise the property and held that if the appraisal was incorrect, any potential remedy lay in tort. *Id.* (quoting *Duhl*, 429 N.E.2d at 1271-72).

11

The FDIC contends that *Sampen* is inapposite because it involves an appraisal that did not include some of the same certifications as the Appraisals at issue here. (R. 17, Pl.'s Resp. Masarsky at 4; R. 37, Pl.'s Resp. Surges at 4.) Specifically, the FDIC argues that because the Appraisals included certification 23, the false representations within the Appraisals constitute a breach of contract. (R. 17, Pl.'s Resp. Masarsky at 4; R. 37, Pl.'s Resp. Surges at 4.) Certification 23, however, does not guarantee the truthfulness of the Appraisals or provide grounds for a breach of contract action, and the Court is unconvinced that the addition of certification 23 to the Appraisals requires a departure from Illinois case law.

Several of the certifications attached to Defendants' Appraisals *do* guarantee the accuracy of the Appraisals, (R. 1, Compl. ¶ 14), but the Appraisals are not the contracts the FDIC alleges the Defendants breached. In *Frankel*, the FDIC alleged that "Defendants failed to comply with the *terms* of the agreement requiring Defendants not simply to prepare the Appraisal, but to do so in accordance with USPAP standards and other relevant appraisal parameters." 2011 WL 5975262, at * 3. Here, the FDIC has made no such allegation; the FDIC merely states Defendants' alleged misrepresentations within the Appraisals and then concludes that such misconduct constitutes breach of their contracts to appraise the Property. (R. 1, Compl. ¶ 26.) Although federal courts in other districts have found similar allegations sufficient to state a claim for breach of contract, *see, e.g.*, *Levitt*, 2011 WL 4591933, at *3, this Court is bound by Illinois law.

The Court thus determines that although the FDIC has sufficiently alleged the existence of Defendants' contracts with the Broker, it has not sufficiently alleged the breach of those contracts under Illinois law. Accordingly, Count I of the complaint is dismissed.

**III.    Whether the FDIC's negligent misrepresentation and negligence claims are barred by the _Moorman_ doctrine**

Defendants next argue that Counts II and III should be dismissed because the _Moorman_ doctrine bars the FDIC from recovering under a theory of negligent misrepresentation or negligence. (R. 14, Masarsky's Mem. at 6-7; R. 28-2, Surges' Mem. at 6-7.) The _Moorman_ doctrine prohibits plaintiffs from recovering under a negligence theory for purely economic damages. _Moorman Mfg._, 435 N.E.2d at 453. There is no dispute that the FDIC is only seeking economic damages. (_See_ R. 1, Compl. at 9.) However, Illinois law recognizes an exception to the _Moorman_ doctrine, known as the information provider exception, for plaintiffs whose damages were caused by negligent misrepresentations "by a defendant in the business of supplying information for the guidance of others in their business transactions." _First Midwest Bank, N.A. v. Stewart Title Guar. Co._, 843 N.E.2d 327, 333-34 (Ill. 2006).

The key inquiry in determining whether the information provider exception to the _Moorman_ doctrine applies "is whether the defendant is in the business of supplying information for the guidance of others, or whether the information that is supplied is merely ancillary" to the ultimate work product. _Fireman's Fund Ins. Co. v. SEC Donohue, Inc._, 679 N.E.2d 1197, 1201 (Ill. 1997). For example, in _Fireman's Fund_, the Illinois Supreme Court held that an engineer's plans and drawings, which misrepresented the location site for digging and boring, were incidental to the ultimate and tangible result of his work, a water supply system. _Id._ at 1201-02. Thus, the exception did not apply, and the negligent misrepresentation claim was barred by the _Moorman_ doctrine. _Id._ at 1202. Similarly, in _2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd._, 555 N.E.2d 346, 351 (Ill. 1990), the Illinois Supreme Court held that the information provider exception did not apply to an architectural malpractice claim because "the information supplied by the architect is transformed into the building itself."

It is widely acknowledged that appraisers are an "easy case" in terms of the information

provider exception because they are clearly in the business of providing information for the

guidance of others; in fact, that is *all* their business consists of. *See, e.g., Olson v. Hunter's

Point Homes, LLC*, 964 N.E.2d 60, 64 (Ill. App. Ct. 5th Dist. 2012) ("real estate brokers can be

said to be in the business of supplying information to others in their business transactions and,

thus, can be held liable for negligent misrepresentation"); *Kelley v. Carbone*, 837 N.E.2d 438,

441 (Ill. App. Ct. 2d Dist. 2005) (holding that defendant appraisers could be liable for negligent

misrepresentation under the information provider exception to the *Moorman* doctrine); *Richmond

v. Blair*, 488 N.E.2d 563, 567 (Ill. App. Ct. 1st Dist. 1985) (finding that plaintiff's negligent

misrepresentation claim against defendant real estate brokers fell within the information provider

exception to the *Moorman* doctrine because "it was their business to supply information to [the]

plaintiff for guidance in her business transactions with the seller"); *Duhl*, 429 N.E.2d at 1276

(defendants, a real estate broker and an appraiser, could be found liable for negligent

misrepresentation because "in the course of their business, [they] supplied information for the

guidance of plaintiffs in their business transaction of buying and selling a house and allegedly

failed to exercise proper care and competence in obtaining the information"); *see also Rankow v.

First Chi. Corp.*, 870 F.2d 356, 364 (7th Cir. 1989) (applying Illinois law) ("Real estate brokers .

. . would seem to fall fairly clearly into a category at the opposite end of a continuum beginning

with manufacturers dealing only in tangible goods; brokers . . . arguably provide information

*only.* If we ask what the product is in these cases, the answer is obviously "information.").

Contrary to well-settled Illinois State law regarding real estate appraisers, Defendants

rely on *First Place Bank v. Skyline Funding, Inc.*, No. 10 CV 2044, 2011 WL 824612, at *6

(N.D. Ill. Mar. 4, 2011), to argue that Illinois courts have yet to extend the information provider

exception to real estate appraisers. (R. 14, Masarsky's Mem. at 6; R. 28-2, Surges' Mem. at 7.) In *First Place Bank*, the district court dismissed the plaintiff's claim for negligent misrepresentation because "[a]ccording to the complaint, [defendant's] primary business was originating loans, not providing information." 2011 WL 824612, at *3. The plaintiff amended his complaint, and the court again dismissed the negligent misrepresentation claim, holding that "the complaint makes clear that [defendant's] sale of mortgages—a tangible product, not information—is the heart of the instant dispute." *First Place Bank v. Skyline Funding, Inc.*, No. 10 CV 2044, 2011 WL 3273071, at *6 (N.D. Ill. July 27, 2011). Defendants argue that if the allegations in *First Place Bank*—that the defendant provided information as *part* of its business—were not sufficient to bring the negligent misrepresentation claim under the information provider exception, then the allegations here must be insufficient because the FDIC failed to even allege that Defendants were in the business of supplying information at all. (R. 14, Masarsky's Mem. at 7; R. 28-2, Surges' Mem. at 7.)

Defendants misconstrue the holdings in *First Place Bank*. The district court dismissed the negligent misrepresentation claim because the defendant was not *actually* in the business of providing information, and not because the complaint failed to explicitly allege as much. Here, Defendants are not in the business of originating loans, as the defendant in *First Place Bank* was. Rather, Defendants are "Certified Residential Real Estate Appraiser[s]." (R. 1, Compl. ¶¶ 4-5.) According to the complaint, "Defendants performed appraisals and provided information to TBW." (*Id.* ¶ 30.) The alleged misrepresentations in the Appraisals were not incidental to an ultimate tangible product, they *were* the ultimate tangible product. Consequently, *First Place Bank* is inapposite.

Accepting all of the allegations as true and drawing all inferences in the FDIC's favor, the Court finds that the information provided in Defendants' Appraisals is at the heart of this dispute; the information was not incidental to the sale or creation of a tangible product. In light of the clear Illinois case law indicating that real estate brokers and appraisers are "in the business of supplying information for the guidance of others in their business transactions," and the FDIC's allegations indicating that Defendants were specifically hired to provide information about the Property to be used in TBW's determination of whether to fund the loan, the complaint has clearly alleged facts sufficient to invoke the information provider exception to the *Moorman* doctrine.

## IV.  Whether Defendants owed an extracontractual duty to the FDIC

Defendants next argue that the FDIC has failed to state a claim for negligence in Count III. (R. 14, Masarsky's Mem. at 6; R. 28-2, Surges' Mem. at 6.) They contend that because the only intended user of the Appraisals was TBW, they did not owe a duty to Colonial. (R. 14, Masarsky's Mem. at 6; R. 28-2, Surges' Mem. at 6.)

To plead a cause of action for negligence in Illinois, a plaintiff must allege that the "defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach." *Espinoza v. Elgin, Joliet & E. Ry. Co.*, 649 N.E.2d 1323, 1326 (Ill. 1995). Whether a duty existed is a question of law to be decided by the court. *Kelley*, 837 N.E.2d at 441. As noted above, the *Moorman* doctrine bars recovery in tort for purely economic losses. However, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994). Where the *Moorman* doctrine does not bar recovery, "a defendant's negligent

performance of its undertaking should extend to that class of persons defendant could reasonably have foreseen would be damaged by its negligent performance." *Rosenstein v. Standard & Poor's Corp.*, 636 N.E.2d 665, 670 (Ill. App. Ct. 1st Dist. 1993). The Illinois Supreme Court has made clear that "lack of direct contractual relationship between the parties is not a defense in a tort action," and that tort liability is to "be measured by the scope of the duty owed rather than the artificial concepts of privity." *Rozny v. Marnul*, 250 N.E.2d 656, 660 (Ill. 1969). Thus, liability for negligent misrepresentation may exist as to third parties when their reliance was foreseeable. *Id.* at 663; *see also Kelley*, 837 N.E.2d at 441 ("liability is limited to the person or the limited group of persons for whose benefit and guidance the information is intended").

The Illinois Supreme Court examined the intersection of duty and the *Moorman* doctrine in *Congregation of the Passion*, a case involving allegations of breach of contract and professional negligence by an accountant. 636 N.E.2d 503 (Ill. 1994). There, the plaintiff alleged that the defendant accounting firm breached its common law duty of care in preparing the plaintiff's financial reports. *Id.* at 512. After discussing *Moorman* and its progeny, the Illinois Supreme Court concluded that

> the doctrine [of economic loss] is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty. . . . The underlying issue is whether the duty an accountant owes to his client is defined by his contractual obligations, or is extracontractual.

*Id.* at 514. The court held that the plaintiff's negligence claim was not barred by the *Moorman* doctrine. *Id.* at 512. It explained that "[i]t is not necessary or generally possible to memorialize all the elements of 'competent representation' in a contract," but a client should nevertheless be able to expect reasonable professional competence. *Id.* at 515. Thus, it concluded that the plaintiff "had the right to rely on the accountant's knowledge and expertise," which was

"expected independent of the accountant's contractual obligations." *Id.* In short, *Congregation of the Passion* teaches that where there are duties that arise outside of the contract, the *Moorman* doctrine does not bar recovery in tort for economic losses.

The FDIC argues that it has alleged duties that "arise outside of the appraisal contract." (R. 17, Pl.'s Resp. Masarsky at 13; R. 37, Pl.'s Resp. Surges at 14-15.) To support this argument, the FDIC directs the Court to an allegation in the complaint stating: "Defendants owed TBW a duty to act in accordance with the law and in accordance with custom, practices and standards of conduct of an appraiser prevailing in the industry." (R. 1, Compl. ¶ 37.) In their replies, Defendants argue that Illinois courts have held that "the applicable standard and law for real estate appraisers (the [USPAP]) does not create a duty to third parties." (R. 18, Masarsky's Reply at 8; R. 41 Surges' Reply at 8.)

Defendants rely on *Kelley*, 837 N.E.2d at 443, to support their argument that the USPAP does not create a duty on which the FDIC may base its negligence claim; Defendants misconstrue *Kelley*'s holding. (*See* R. 18, Masarsky's Reply at 8; R. 41, Surges' Reply at 8.) The defendants in *Kelley* were appraisers of property that plaintiffs leased and intended to purchase from the lessor. 837 N.E.2d at 440. The defendants argued that they did not owe a duty to plaintiffs "because the appraisal state[d] that it was prepared exclusively for the use of [the lessor]." *Id.* at 442. The Illinois appellate court did not find this argument persuasive and stated that the disclaimer did "no more than establish a lack of contractual privity between plaintiffs and defendants . . . [yet] defendants may owe plaintiffs a duty despite the lack of privity." *Id.* While the *Kelley* court concluded that "USPAP does not create a duty toward third parties," it held that the standards may nevertheless "help define the scope of a preexisting duty." *Id.* at 443. Furthermore, although the appraisal at issue "did not carry an unequivocal guarantee

of accuracy," the court found that the defendants had "indirectly warrant[ed] the accuracy of their work" by certifying that they had complied with the USPAP. *Id.* at 442-43. Thus, the court held that "defendants' duty existed by virtue of their knowledge that plaintiffs would rely on their report." *Id.* at 443.

In the present case, the FDIC has sufficiently alleged that Defendants had a duty to comply with industry standards and that they failed to comply with the USPAP despite certifying that the Appraisals were performed "in accordance with the requirements of the [USPAP]." (R. 1, Compl. ¶ 14, 38.) The FDIC alleges that Defendants knew that certain secondary market participants, such as Colonial, would rely on the representations made in the appraisal. (*Id.* ¶ 14.) Indeed, in certification 23, Defendants acknowledged that certain "secondary market participants may rely on [the] appraisal report as part of any mortgage finance transaction." (*Id.*) On the basis of the foregoing allegations, the Court finds that the FDIC has sufficiently alleged that Defendants owed TBW and foreseeable third parties, such as Colonial, an extracontractual duty to accurately prepare the appraisals. *See Kelley*, 837 N.E.2d at 443. The Court thus declines to dismiss Count III of the complaint.

## V. Whether the FDIC has sufficiently stated a claim for negligent misrepresentation

Defendants next argue that the FDIC has failed to state a claim for negligent misrepresentation in Count II. (R. 14, Masarsky's Mem. at 5-6; R. 28-2, Surges' Mem. at 5-6.) To state a claim for negligent misrepresentation, a plaintiff must allege:

> (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.

*First Midwest Bank*, 843 N.E.2d at 332. In support of its claim for negligent misrepresentation, the FDIC alleges that the Appraisals included a number of certifications, including one stating that Defendants "performed a complete visual inspection of the interior and exterior areas of the subject property [and] reported the condition of improvements in *factual, specific terms*." (R. 1, Compl. ¶ 14) (emphasis added). The certifications the FDIC quote in its complaint made repeated use of the word "opinion," but also acknowledged that any "intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability." (*Id.*) Each Appraisal certified that, "to the best of [Defendant's] knowledge, all statements and information in [the] report are true and correct." (*Id.*)

Defendants argue that the FDIC's allegations do not sufficiently state the first element of a negligent misrepresentation claim because the statements contained in their Appraisals are expressions of opinion and are therefore not actionable under a theory of negligent misrepresentation. (R. 14, Masarsky's Mem. at 5; R. 28-2, Surges' Mem. at 5-6.) They point to numerous statements within their Appraisals that they contend indicate opinions: "The purpose of this appraisal is to develop an opinion of the market value of the subject property," and "In my opinion, the market value of the property . . . ." (R. 14, Masarsky's Mem. at 5; *see also* R. 28-2, Surges' Mem. at 6.) Surges argues that "the FDIC attempts to steer this Court toward relying upon certain parts of Surges' appraisal, namely Certification 23, while ignoring other parts of the appraisal, namely every instance of Surges' stated opinion." (R. 41, Surges' Reply at 6) (internal citation omitted).

In *Duhl*, the plaintiffs detrimentally relied on their realtor's appraisal. 429 N.E.2d at 1270-71. The realtor had repeatedly represented her skill and expertise and provided the plaintiffs materials that emphasized her knowledge of market value. *Id.* The Illinois appellate

court held that her statements concerning facts or conditions were actionable under a negligent misrepresentation claim because they were intended to be accepted as fact. *Id.* at 1273-76. In light of the realtor's assurances that her appraisal was correct, the *Duhl* court stated that "one should not be allowed to hold oneself out as an expert whose statements or advice is to be relied upon and then, after someone else has relied on that advice to his detriment, say 'You should not have believed me.'" *Id.* at 1274. "The defendants cannot complain of the plaintiffs' reliance where the defendant inhibited any inquiries by lulling them into a false sense of security." *Id.* at 1274-75.

Similarly, the Illinois appellate court in *Perschall v. Raney* affirmed the lower court's finding that the defendant termite inspector, who knew the report would be relied on by third parties when determining whether to purchase the property at issue, was liable for negligent misrepresentation. 484 N.E.2d 1286, 1291 (Ill. App. Ct. 4th Dist. 1985). Of significance was the defendant's awareness that "the report would be provided to and relied upon by prospective purchasers, such as plaintiffs." *Id.* at 1290. The *Perschall* court also found that the "defendant invited substantial reliance on the report by stating that there was no structural damage or infestation," and the plaintiffs did not need to consult an expert or seek treatment of the property. *Id.* The court held that the appearance of that statement on the face of the report negated the effects of the internal disclaimer that the report was not a guarantee. *Id.*

Here, the FDIC alleges that Defendants knew and intended that their Appraisals would be provided to and relied upon by third parties. (R. 1, Compl. ¶ 32.) Defendants argue that their Appraisals contained only opinions regarding the value of the Property. (*See* R. 14, Masarsky's Mem. at 5; R. 28-2, Surges' Mem. at 5-6.) Nevertheless, the Appraisals contained more than mere statements of value. For example, the Appraisals represented "that construction of the

21

Property was complete even though construction had not been complete[d] and building permits had expired," even though they certified that Defendants "performed a complete visual inspection of the interior and exterior areas of the [Property]" and "reported the condition of improvements in factual, specific terms." (R. 1, Compl. ¶¶ 14, 26.) The Appraisals also certified that the most similar comparable sales were used when, the FDIC alleges, that was not in fact the case. (R. 1, Compl. ¶¶ 14, 31.) The Court finds that the certifications attached to the Appraisals negated the effect of Defendants' statements that the Appraisals were opinions, especially insofar as Defendants misstated material facts. *See Perschall*, 484 N.E.2d at 1290; *see also Buzzard v. Bolger*, 453 N.E.2d 1129, 1131 (Ill App. Ct. 2d Dist. 1983) ("misrepresentations of material fact made negligently [by a realtor] could well be the basis for a cause of action for negligent misrepresentation"). Thus, the FDIC has sufficiently stated a claim for negligent misrepresentation.

Seeking to avoid this result, Defendants rely on *Sampen*, 584 N.E.2d at 495, and *Miller v. Lockport Realty Group, Inc.*, 878 N.E.2d 171, 179 (Ill. App. Ct. 1st Dist. 2007), to support their arguments that statements concerning property valuations are expressions of opinion and therefore not actionable as misrepresentations. (R. 14, Masarsky's Mem. at 5; R. 28-2, Surges' Mem. at 5.) Defendants' cases are inapposite. In *Sampen*, a common law negligent misrepresentation claim was not at issue. 584 N.E.2d at 498. Instead, the plaintiff brought a claim under the Illinois Consumer Fraud Act. *Id.* In affirming the dismissal of the Fraud Act claim, the *Sampen* court held that the good faith erroneous appraisals were not actionable misrepresentations *under the Consumer Fraud Act. Id.* In *Miller*, the Illinois appellate court held that a real estate broker's estimate of the value of his client's property for the purpose of listing it did not constitute a fraudulent overstatement of value that created liability for tortious

interference with business. 878 N.E.2d at 178-79. The defendant was not an appraiser and did not make any certifications regarding his estimate, which was based on appropriate comparable sales and was not detrimentally relied upon. *Id.*

Because the facts herein at issue are more similar to the issues in *Duhl* and *Perschall* than to those in *Sampen* and *Miller*, the Court finds that the FDIC has sufficiently alleged that the Appraisals contained misstatements of fact and are thus actionable as negligent misrepresentations. The Court therefore declines to dismiss Count II.

## VI. Whether the Court should strike the FDIC's request for attorney's fees

Finally, Defendants argue that the FDIC has not, and cannot, plead an appropriate basis for attorney's fees. (R. 14, Masarsky's Mem. at 7; R. 28-2, Surges' Mem. at 7-8.) Generally, a prevailing party may not recover attorney's fees and costs in the absence of a statute or contractual agreement between the parties authorizing such recovery. *Goldstein v. DABS Asset Manager, Inc.*, 886 N.E.2d 1117, 1121 (Ill. App. Ct. 1st Dist. 2008). The FDIC nevertheless contends that striking this request would be premature, as attorney's fees may be awarded as a form of damages. (R. 17, Pl.'s Resp. Masarsky at 14; R. 37, Pl.'s Resp. Surges at 15.) The Court agrees.

While a plaintiff cannot recover fees expended in the present action, it "can recover the attorney fees expended in an effort to cure the damage caused by the defendant." *Duignan v. Lincoln Towers Ins. Agency, Inc.*, 667 N.E.2d 608, 613 (Ill. App. Ct. 1st Dist. 1996). Illinois courts have allowed plaintiffs to recover attorney's fees expended to settle with an insurance company when defendant wrongfully caused the company to cancel the plaintiff's policy, *id.*, attorney's fees expended to obtain refunds of tax penalties that were assessed on the plaintiff due to the defendant's negligence, *Sorenson v. Fio Rito*, 413 N.E.2d 47, 52 (Ill. App. Ct. 1st Dist.

1980), and attorney's fees expended to file and prosecute a second divorce petition when the defendant's legal malpractice resulted in the dismissal of the plaintiff's first petition, *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1259 (Ill. App. Ct. 2d Dist. 2008).

In *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, this Court declined to strike a request for attorney's fees and costs because, at the motion to dismiss stage of the litigation, it was impossible to "determine as a definitive matter that fees and costs [were] wholly unavailable" to the plaintiff. 462 F. Supp. 2d 897, 908 (N.D. Ill. 2006); *see also Ill. Constructors Corp. v. Morency & Assocs.*, 802 F. Supp. 185, 190 (N.D. Ill. 1992) (noting that it is normal for complaints to request attorney's fees in its prayer for relief and that it would be premature to strike this request since "later developments may justify a request for fees."). Here, too, the Court concludes that it would be premature to strike the FDIC's request for attorney's fees and declines to do so.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (R. 12; R. 28; R. 31) are DENIED in part and GRANTED in part. The Court finds that Count I fails to state a claim for which relief can be granted and dismisses Count I. The Court denies Defendants' motions to dismiss Counts II and III. Additionally, the Court denies as premature Defendants' requests to strike the FDIC's request for attorney's fees. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on September 11, 2013 at 9:45 a.m.

ENTERED: _____
Chief Judge Ruben Castillo
United States District Court

Dated: August 27, 2013